IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ANDREW MYLINH | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No.05-866-AS |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

ALAN STUART GRAF
P.O. Box 98
Summertown, TN 38483

  Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

L. JAMALA EDWARDS
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

  Attorneys for Defendant

ASHMANSKAS, Magistrate Judge:

Plaintiff Andrew Mylinh seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## BACKGROUND

Born in Laos in1963, Mylinh immigrated to the U.S. in 1982. Tr. 99, 148.[1]  He became a naturalized citizen in 1988. Tr. 98, 148.   Mylinh has an eleventh grade education. Tr. 139. Between 1988 and 2000 he worked as a mail sorter and janitor. Tr. 132, 190.

Mylinh received a Human Immuno-Deficiency Virus (HIV) diagnosis in 1991. Tr.  361, 656. In August 1996 Mylinh subsequently developed Acquired Immune Deficiency Syndrome (AIDS). Tr. 361. Mylinh has numerous opportunistic diseases associated with AIDS. Tr. 331, 341 - 345, 477, 651. Mylinh additionally has a history of depression with psychosis and cognitive dysfunction, resulting in two hospitalizations. Tr. 242 - 277, 554 - 569. Finally, Mylinh has chronic liver disease and diabetes mellitus, which is not well controlled. Tr. 331, 332, 660 - 663.

Mylinh contends he has been disabled and unable to work because of his impairments since May 2000. Tr. 25, 99, 126. Mylinh applied for DIB and SSI on July 26, 2000. Tr. 25, 99 - 112, 686 - 701. These applications were initially denied. Tr. 39 - 42, 708 - 710. A hearing

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket # 8).

was held before an Administrative Law Judge (ALJ), who again denied Mylinh's application.

Tr. 25 - 36.  The Commissioner's decision became final on April 20, 2005.  Tr. 7.  Mylinh

presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five

steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520(a),

416.920(a); *Bowen v. Yuckert*, 107 S. Ct. 2287, 2291 (1987).  Mylinh challenges the ALJ's

evaluation of the evidence and his conclusions at steps three and four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ

determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant

does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed"

impairment in the regulations.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is determined to

equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e),

416.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this

information to determine if the claimant can perform past relevant work at step four. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(iv).  If the claimant cannot perform past relevant work, the

ALJ must determine if the claimant can perform other work in the national economy at step five.

*Yuckert*,107 S. Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098.  If the process reaches the fifth step the burden shifts to the Commissioner to show that

jobs exist in the national economy in the claimant's residual functional capacity.  *Yuckert*, 107 S.

Ct. at 2291; *Tackett*, 180 F.3d at 1098.  If the Commissioner meets this burden the claimant is

not disabled. 20 C.F.R. §§  404.1566, 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

In his August 2003 decision, the ALJ found Mylinh's ability to work significantly limited

by his HIV infection, diabetes, "dysthymia" and history of depression.  Tr. 26.   The ALJ

assessed Mylinh's RFC:

> The claimant has the residual functional capacity to perform a
> modified range of medium activity.  He can stand and/or walk for six
> hours of an eight-hour workday.  He can sit for six hours of an eight-
> hour workday.   He has moderate limitations in his ability to
> understand, remember, and carry out detailed instructions and to
> maintain attention and concentration for extended periods.

Tr. 36.

The ALJ found that this RFC allowed Mylinh to return to his past relevant work as a mail sorter,

janitor, and odd jobs worker.  Tr. 36.   The ALJ therefore determined that Mylinh was not

disabled under the Act at any time through the date of his decision.  Tr. 24.

## STANDARD OF REVIEW

4 - FINDINGS AND RECOMMENDATION

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)).  The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Mylinh contends that the ALJ failed to reach an accurate RFC assessment because he failed to credit Mylinh's testimony, improperly evaluated the medical evidence, and failed to consider whether Mylinh's impairments equaled a listed disorder.

### 1. Mylinh's Credibility

The ALJ's reasoning for suspecting Mylinh's credibility is primarily based upon Mylihn's failure to follow prescribed treatment and his allegedly exaggerated statements.  Tr. 31.  The ALJ also noted Mylinh's daily activities.  Tr. 32.

The ALJ must provide clear and convincing reasons for discrediting a claimant's symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

5 - FINDINGS AND RECOMMENDATION

1995).  In construing his findings, the ALJ may consider objective medical evidence and the

claimant's treatment history, as well as the claimant's daily activities, work record, and

observations of physicians and third parties with personal knowledge of the claimant's functional

limitations.  *Smolen*, 80 F.3d at 1284.  Additionally, the ALJ may employ ordinary techniques of

credibility evaluation, such as weighing inconsistent statements regarding symptoms by the

claimant. *Id*.

### a.        Inconsistent Statements

The ALJ found that Mylinh "exaggerated" his back impairment in stating that he had a

"fractured" disc, when medical evidence showed he had an impinged disc.  Tr. 31, 32.  The

record repeatedly shows that Mylinh's English is rudimentary and his understanding of medical

diagnoses is questionable.[2]  Tr.  137, 147, 160.  The ALJ noted that Mylinh is currently

attempting to improve his English. Tr. 32.  For these reasons, the ALJ's finding that Mylinh

misconstrued his back impairment in deliberate "exaggeration" is not a rational reading of the

record.  *Batson*, 359 F.3d at 1193, *Magallanes*, 881 F.2d at 751.  This finding should not be

sustained.

This court also notes that ALJ erred in suggesting a hypothetical question to the

vocational expert regarding an individual who can "read and write in English."  Tr. 771.  This

hypothetical is unsupported by the record and is therefore invalid.  *Osenbrock v. Apfel*, 240 F.3d

1157, 1163 - 1165 (9th Cir. 2001).

---

[2]  It is additionally clear from the hearing transcript that Mylinh did not understand
questioning.  Tr. 732 - 753.

**b.      Activities of Daily Living**

The ALJ cited Mylinh's reported ability to shop, prepare meals, perform household chores, walk for one mile, read a newspaper, and watch television as contradictory evidence to his alleged ability to work.  Tr. 32.  Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily activities, such as those above, is not equivalent to full time employment.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

This court does not find the identified activities inconsistent with Mylinh's medical record, discussed below. In evaluating Mylinh's reported activities, tThis court also notes the implications of lay witness testimony suggesting Mylinh "wants to appear as functioning better than he truly is."  Tr. 684.  A claimant need not "vegetate in a dark room," to be found disabled.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  The ALJ's analysis of Mylinh's activities should not be sustained.

**c.      Non-Compliance With Treatment**

The ALJ also found that Mylinh failed to appropriately treat his elevated blood sugar.  Tr. 31 - 32.  Mylinh testified at his hearing that he could not afford his medications.  Tr. 732.  The ALJ found this "highly unlikely because he was receiving health insurance benefits" at the time of his alleged refusal to comply with treatment.  Tr. 32.  Regardless, the record does not support the ALJ's finding of non-compliance.

Failure to follow prescribed treatment is an acceptable reasons to question credibility.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); *Smolen*, 80 F.3d at 1284.  Mylinh's medical record does not show deliberate non-compliance.  The record shows one

7 - FINDINGS AND RECOMMENDATION

isolated episode of reported discontinuation of HIV and antidepressant medications.  Tr. 242.

Diabetic practitioners stated that they were puzzled by Mylinh's blood sugar, but did not

explicitly find him non-compliant.  Tr.  230, 365, 660.   The ALJ's assessment of Mylinh's

refusal of treatment based upon non-compliance with his diabetic medication is not based upon

the record and should not be sustained.

## 2.  Medical Source Statements

Mylinh contends the ALJ improperly rejected the opinions of four health practitioners.

Mylinh points to no evidence in the record regarding the ALJ's treatment of his AIDS

complications.  Plaintiff's Opening Brief, 13 - 18.   Defendant suggests the ALJ appropriately

evaluated medical source statements and further suggests "Plaintiff has shown significant

improvement in his symptoms and does not have a credible argument for disability benefits."

Defendant's Brief, 12.

### a.  Acceptable Medical Source Statements

#### 1.      *Mylinh's Comprehensive Medical Record*

Mylinh received an HIV diagnosis in 1991 and a subsequent AIDS diagnosis in 1996.

Tr. 331.  Since 1992 he has had chronic hepatitis B and "chronic active liver disease."  Tr. 331 -

332, 662.  Mylinh also has a history of tuberculosis and chronically uncontrolled diabetes.  Tr.

147, 224, 331 - 332, 660 - 663.

Between 1997 and July 2002, when the record closes, Mylinh manifested many

opportunistic AIDS-related illnesses.  In 1997 Mylinh developed herpes zoraster, which is

considered an HIV complication.  Tr.  331, 477.  Between May 1998 and June 1999 Mylinh

developed bilateral parotid gland swelling, which is an HIV complication.  Tr. 341 - 345, 477,

651.  In August 1999 Mylinh was hospitalized for acute gastroenteritis with anemia, again

significant in an AIDS patient.  Tr. 224 - 233.   In June 2000 Mylinh was hospitalized for a

"cough;" medical records indicate that by this date Mylinh's HIV had progressed to AIDS  Tr.

317 - 318.  By 2001 Mylinh evidenced molluscum contagiosum, a viral skin infection and HIV

complication identified in the Social Security Regulations.  Tr. 331.  An undated report indicates

that Mylinh also developed HIV retinopathy.  Tr. 306.

These illnesses are documented by acceptable medical sources and accompanied by

treatment notes and laboratory findings.  The record contains no contradictory findings.  This

evidence should be credited.  *Smolen*, 80 F.3d at 1292,  *Bayliss*, 427 F.3d at 1216.  Each of these

illnesses is an AIDS-related complication under social security regulations, discussed below.  20

C.F.R. Subpart P, Appendix 1 § 14.08.

### 2.     *Evaluating Psychologist Dr. Schock*

Dr. Schock evaluated Mylinh's cognitive functioning in June 2000.  Tr. 308 - 316.

Based upon extensive clinical examination and neuropsychological testing, Schock diagnosed

recurrent major depressive disorder and a cognitive disorder.  Tr. 311.  Schock also found

Mylinh's memory "considerably impaired," and noted "marked memory problems."  Tr. 311.

The ALJ accorded Schock's assessment "little weight," because "it is inconsistent with her

reports that the claimant could adequately complete activities of daily living and was able to

socialize appropriately."  Tr. 29.  This is not an accurate reading of the record.  Schock did not

report that Mylinh could maintain activities of daily living, noting that while Mylinh could feed

and dress himself, he struggles to "adequately maintain hygiene, cannot stay on task, has

difficulty scheduling activities, and has trouble understanding and following new instructions."

Tr. 311.  Schock finally concluded that "ongoing psychiatric treatment of his psychiatric

symptoms is paramount."  Tr. 311.   The ALJ's analysis of Schock's report is not supported by

the record and should not be sustained.  Schock's report should be credited.  *Smolen*, 80 F.3d at

1292.


### 3.      *Treating Psychiatrists*

Mylinh was twice hospitalized for psychiatric illness between May 2000 and June 2001.

Tr. 242 - 277, 554 - 569.  The ALJ mentioned Mylinh's May 2000 hospital admission for

depression in passing only and did not cite Mylinh's June 2001 hospitalization.  Tr. 29.  In May

2000, treating physicians Drs. Farley and McGowan diagnosed major depressive disorder with

auditory hallucinations.  Tr. 242 - 244.  Their diagnoses are supported by extensive clinical notes

and should be credited.  *Smollen*, 80 F.3d at 1292, *see Bayliss*, 427 F.3d at 1216.

Mylinh subsequently received outpatient psychiatric treatment at Oregon Health Sciences

University (OHSU).  Tr. 321 - 322.   Treating physicians indicated that his diagnosis continued

as major depression.  Tr. 322, 331.  In June 2001 Mylinh was again hospitalized for depression

and auditory hallucinations.  Tr. 554 - 569.  Treating physician Dr. Erickson continued to

diagnose major recurrent depression, with psychosis.  Tr. 556.  Erickson also added diagnoses of

dysthmia and post-traumatic stress disorder (PTSD).  Erickson's report is supported by

substantial clincial notes and should be credited.  *Smolen*, 80 F.3d at 1292.

Robert W. Davis, Ph.D., served as a medical expert at Mylinh's hearing.  Tr. 763.   Davis

suggested Mylinh's diagnosis at the time of the hearing was "only dysthymia," rather than major

depression.  Tr. 765.  The psychiatric opinions discussed above directly contradict the Davis'

10 - FINDINGS AND RECOMMENDATION

opinion.  A treating physician's opinion is accorded greater weight than that of a reviewing

physician.  *Edlund*, 253 F.3d at 1157. Additionally, a reviewing physician alone cannot

constitute substantial evidence justifying rejection of an examining or treating physician.  *Lester*

*v. Chater*, 81 F.3d 821,  832 (9th Cir. 1995).  The ALJ's reliance on Davis' opinion was clear error

and should not be sustained.

### 4.  *Janice Voudikis, Nurse Practitioner*

Nurse practitioner Voudikis submitted a letter to the record stating that Mylinh's

"diabetes has been complicated and worsened by his HIV status."  Tr. 683.  She also noted that

Mylinh's psychotropic medications worsened his diabetes symptoms.  *Id.*  The ALJ found this

reasoning inconsistent, noting that Mylinh ceased taking the psychiatric medication which

exacerbated his diabetes before Voudikis composed her letter.  Tr. 34.  This reasoning does not

obliterate prior effects of that medication and should not be sustained.

Voudikis stated that she treated Mylinh within an OHSU clinic.  Her letter is on OHSU

clinic letterhead, citing seventeen physicians.  For these reasons, Voudikis is construed as a

member of a treatment team and is evaluated as a medical source.  *Gomez v. Chater*, 74 F.3d

967, 971 (9th Cir. 1996).  The ALJ accorded Voudikis "little weight" because "the medical record

as a whole reveals that the claimant's physical and mental conditions are controllable with

appropriate medical treatment."  Tr. 34.  This statement is erroneous, in light of the record

discussed above. The medical record supports Vouldikis' opinion and it should be credited.

*Smolen*, 80 F.3d at 1292.

Additionally, an ALJ must provide a reason germane to the witness in rejecting lay

witness testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ cited

11 - FINDINGS AND RECOMMENDATION

Mylinh's noncompliance with medication in rejecting Voudikis' opinion as a lay witness.  This is not a reason germane to Vouldikis.

The ALJ analyzed Voudikis' testimony under the wrong standard and misapplied that standard.  For the reasons above Voudikis should be evaluated as a medical source and her opinion should be credited.  *Gomez*, 74 F.3d at 971, *Smollen*, 80 F.3d at 1292.

**b.    Lay Witness Testimony**

Physician's assistants and nurse practitioners working on their own are evaluated as lay witness testimony.  20 C.F.R. §§ 404.1513(d), 416.913(d), *Gomez*, 74 F.3d at 971.

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915,  919 (9th Cir. 1993).  The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering."  *Dodrill*, 12 F.3d at 918.  The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence.  *Lewis*, 236 F.3d at 512, *Nguyen*, 100 F.3d at 1467.  If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness.  *Id.*

**b.  Mary Tegger, Physician's Assistant**

Mary Tegger is a Physician's Assistant who co-ordinated Mylinh's medical care at the Multnomah County Health Clinic between December 1997 and January 2001.  Tr. 363 - 476.  Tegger's clinical notes show the progression of Mylinh's HIV disease throughout this period.  Tr. 363 - 539.  In August 2000 Tegger wrote a letter to the record summarizing Mylinh's clinical

history.  Tr. 362 - 363.  Lay witness testimony cannot establish a medical diagnosis, but a lay

witness may offer competent evidence regarding a claimant's symptoms.  *Lewis*, 236 F.3d at 512,

*Nguyen*, 100 F.3d at 1467.  Here, Tegger offered a disability opinion which the ALJ discredited,

saying the "claimant's diabetes was noted to be in poor control..." and "treatment of HIV with

'antiretroviral medication' had not been begun.  With treatment the claimant has demonstrated

clinical improvement."  Tr. 33.

The ALJ's statement regarding Mylinh's "improvement" is erroneous in light of the

record reviewed above.  Specifically, the viral load blood tests cited by the ALJ are accompanied

by rubric stating that such measurements are not a definitive guide to HIV progression. Tr. 658.

Furthermore, such alleged improvement is not a germane reason for discrediting Tegger's

testimony.

The ALJ also noted that Tegger is not an "acceptable medical source."  Tr. 34.  This is

true, but again, this is not a germane reason for discrediting a lay witness.  Tegger's testimony

summarizing the medical record is supported by voluminous clinical notes produced by

acceptable medical sources and should be credited.  *See Schneider v. Commissioner*, 223 F.3d

968, 976 (9th Cir. 2000).

### c.  Claire Cavanaugh, RN

Cavanaugh submitted a letter to Mylinh's attorney stating that she observed Mylinh's

depressive symptoms:

> During the time I have worked with Andrew Mylinh I have noted
> his chronically flat affect, depressed mood, poverty of speech, and
> social withdrawal.  At times he has difficulty processing and
> retaining information... he seems to want to appear as functioning
> better than he truly is and frequently states he is doing better than
> those around him (including his family members) feel he is doing.

13 - FINDINGS AND RECOMMENDATION

Tr. 684.

This court notes that Cavanaugh's employing organization includes the Social Security

Administration.  Tr. 684.  However, because there is no evidence that Cavanaugh was

functioning under the supervision of an acceptable medical source she is evaluated as a lay

witness.  *Gomez*, 74 F.3d at 971.  The ALJ must give germane reasons for dismissing lay witness

testimony.  *Nguyen*, 100 F.3d at 1467.

The ALJ found Cavanaugh's testimony inconsistent because her report also indicated

Mylinh experienced improvement.  Tr. 34.  The ALJ also noted, "it is unclear how long Nurse

Cavanaugh actually worked with the claimant," and suggested her report was not credible

because it was not accompanied by records documenting clinical findings.  Tr. 34.

An ALJ may note inconsistencies in lay witness testimony, or find  lay witness testimony

generally unsupported by the clinical record.  *Lewis*, 236 F.3d at 511, *Nguyen*, 100 F.3d at 1467.

Because a lay witness is not an acceptable medical source under Social Security regulations,

rejecting lay witness' observations because they are unaccompanied by clinical notes is not an

acceptable, or germane, reason to discredit lay witness observations.    20 C.F.R. §§ 404.1513(d);

416.913(d).  As established above, Mylinh's medical record does not show sustained

improvement.  The ALJ's reasons reasons for discrediting Cavanaugh's testimony should not be

sustained.  Cavanaugh's testimony should be credited.  *Smollen*, 80 F.3d at 1292.

**4. The ALJ's Step Three Finding**

Mylinh argues the ALJ erred in failing to consider his impairments in combination.

Mylinh points to listing 12.04 in support of his step three argument, but fails to articulate any

argument regarding his AIDS-related complications and an equivalency finding.  Plaintiff's

Opening Brief, 18.

### a.  The *Marcia* Argument

This court notes that an ALJ is not required to consider impairments in combination unless a claimant presents evidence of equivalency.  *Burch*, 400 F.3d at 673.  In making a finding that a claimant does not meet a listing, singularly or in combination, the ALJ must consider the "symptoms, signs, and laboratory findings" regarding the claimant's impairment as reflected in the medical record.  *Marcia v. Sullivan*,  900 F.2d 172, 176 (9th Cir. 1990).  He may not conclude "the claimant has failed to provide evidence of medically determinable impairments that meet or equal the listings..." without reference to the medical record.  *Id.*  Mylinh suggests the ALJ is required to produce language directly comparing the evidence and the listings.  Plaintiff's Opening Brief, 18.

Subsequent case law suggests the ALJ is not required to exhaustively articulate his findings regarding the listings.  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  *Marcia* and *Gonzalez* may be distinguished based upon the ALJ's summarization of the evidence.  In *Marcia*, the claimant presented evidence regarding her impairments which the ALJ apparently ignored without discussion.  *Marcia*, 900 F.2d 176.  The ALJ's finding in *Gonzalez* was based upon a five-page summary of the medical evidence, with reference to physicians and the claimant's testimony. *Gonzalez*, 914 F.2d at 1201.  Mylinh's argument regarding *Marcia* fails.

### b.  Listings 12.08 and 12.04

However, the ALJ's findings do not reflect the medical record.  This court must sustain an ALJ's reading of the record if it is rational and based upon "inferences reasonably drawn." *Magallanes*, 881 F.2d at 751, *Batson*, 359 F.3d at 1193.  This is not presently the case.

To meet the listing for HIV a claimant must first show documentation establishing HIV infection.  20 C.F.R. Subpart P, App. 1, § 14.00D3.  Mylinh's medical record establishes this infection.  Tr. 658.   A claimant must then manifest at least one of twelve established opportunistic AIDS- related diseases.  20 C.F.R. Subpt. P, App. 1, § 14.08A-M.  Alternatively, a claimant may show "repeated manifestations of HIV infection, (including those listed in 14.08A-M, but without the requisite findings...)" which is accompanied by 1) restrictions in activities of daily living, *or*  2) difficulties in social functioning, *or* 3) deficiencies in concentration, persistence, and pace.  20 C.F.R. Subpt. P, App. 1, § 14.08N.

Each of Mylinh's AIDS-related complications and opportunistic diseases, discussed above, is relevant under the appropriate listing for HIV.  20 C.F.R. Subpart P, Appendix 1, §§ 14.08 E, F, G, H, J, M.  Mylinh's history of tuberculosis and hepatitis infections are also relevant. 20 C.F.R. Subpt. P, App. 1, §§ 14.08 A and D.  Mylinh additionally demonstrates restrictions in activities of daily living, social functioning, and concentration, persistence and pace which satisfy § 14.08N.   Mylinh therefore meets listing 12.08 via his AIDS-related impairments, individually and in combination.

Additionally, the regulations specifically state:

> [T]he impact of all impairments, whether or not related to HIV
> infection, must be considered.  For example, individuals with HIV
> infection may manifest signs and symptoms of a mental
> impairment (e.g. anxiety, depression), or another physical
> impairment.  Medical evidence should include documentation of
> all physical and mental impairments, and the impairments should
> be evlauted not only under the relevant listing(s) in 14.08, but
> under any other appropriate listing(s).
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D(6)(para. 2)

After crediting the opinions of Drs. Schock, Farley, McGowan, and Erickson, as well as lay

16 - FINDINGS AND RECOMMENDATION

witnesses Cavanaugh, this court finds that Mylinh meets or surpasses the Listing criteria for an

affective disorder established in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Mylinh meets this

listing because the credited evidence establishes he has a diagnosis of major depression

accompanied by marked restrictions in activities of daily living, maintaining social functioning,

and maintaining concentration, persistence and pace.    20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12.04(A) and (B). Mylinh additionally has at least two episodes of decompensation, as evidenced

by his successive psychiatric hospitalizations.  This also satisfies the listing criteria.  *Id.*

## REMAND

This court is dismayed to find that the Social Security Administration, the ALJ, and

counsel representing Mylinh failed to appropriately establish Mylinh's correspondence to the

HIV listing.  This court emphasizes the resulting equitable delay in the face of an irreversible

and always-fatal disease and recommends the case be remanded for immediate payment of

benefits.

This court has discretion to remand for further proceedings or for immediate payment of

benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038

(2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits

is appropriate when no useful purpose would be served by further administrative proceedings or

when the record has been fully developed and the evidence is not sufficient to support the

Commissioner's decision.  *Rodriguez v. Brown*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits

directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such

evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 quoting *Smolen*,

80 F.3d at 1292.  Such is the case here.  The matter should be remanded for an immediate award

of benefits.

## RECOMMENDATION

Based on the foregoing, the ALJ's determination that Mylinh did not suffer from a

disability should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for

calculation and award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge

for review.  Objections, if any, are due October 6, 2006.  If no objections are filed, review of the

Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy

of the objections.  If objections are filed, review of the Findings and Recommendation will go

under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

Dated this 19th  day of September, 2006.


        /s/  Donald C. Ashmanskas
            Donald C. Ashmanskas
            United States Magistrate Judge